IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICKEY SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 22-CV-2166-MAB |
| | ) | |
| DEE DEE BROOKHART, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendant Dr. Vipin Shah's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Docs. 35, 36). For the reasons set forth below, Dr. Shah's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies is GRANTED (Doc. 35).

### BACKGROUND

Plaintiff Mickey Smith brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center (Doc. 1). As it relates to Dr. Shah, Plaintiff alleges that he visited Dr. Shah in June or July of 2020 because he was having trouble swallowing (Doc. 9, p. 2). Dr. Shah told Plaintiff to eat ice, but he did not perform an examination (*Id.*). Plaintiff visited Dr. Shah again in August 2020 and Dr. Shah ordered an x-ray (*Id.*). However, Dr. Shah did not follow up with Plaintiff afterwards (*Id.*). In March 2021, Plaintiff sought medical care after he noticed a lump on the left side of his neck while shaving (*Id.*). Plaintiff was

subsequently seen by doctors other than Dr. Shah in March, May, and August of 2021 (*Id.*). On June 23, 2021, Plaintiff was informed that he had cancer in his neck (Doc. 36-1, p. 41).[1] Following his diagnosis, a port was placed in Plaintiff's chest for radiation and chemotherapy treatment (Doc. 9 at p. 2).[2]

Plaintiff filed his initial Complaint on September 15, 2022 (Doc. 1). The Court conducted a preliminary review pursuant to 28 U.S.C. § 1915A and Plaintiff was allowed to proceed on the following claims:

> **Claim 1**:   Eighth Amendment deliberate indifference against Defendant Shah for delaying or denying treatment of Plaintiff's throat pain beginning in June of 2020;
>
> **Claim 2**:   Eighth Amendment deliberate indifference by Defendants Adamson, Daniels, [] for use of the black box restraints;

(Doc. 9 at pp. 3-5).[3] The Court's preliminary review Order also examined whether Plaintiff raised a claim against Defendant Dee Dee Brookhart (*Id.* at p. 4). After noting that Plaintiff's allegations against Brookhart were unclear, the Court dismissed any claim Plaintiff may have raised against Brookhart, in her individual capacity, because none of Plaintiff's initial allegations established that she was personally responsible for the deprivation of a constitutional right (*Id.*). However, Brookhart remained a party to this

---

[1] The Court and Dr. Shah previously stated that Plaintiff was informed of his neck cancer in August 2021 (*see, e.g.*, Doc. 9 at p. 2; Doc. 36 at p. 2). However, based upon Plaintiff's Grievance 07-21-258, which was filed on July 26, 2021, it appears Plaintiff was informed that he had cancer on June 23, 2021 (Doc. 36-1, p. 41). At the very least, that grievance demonstrates that Plaintiff was aware that he had neck cancer by the time he filed Grievance 07-21-258 on July 26, 2021 (*Id.*).

[2] Plaintiff's Complaint goes on to discuss additional actions taken by the other Defendants in this case. However, those factual allegations will not be discussed in this Order because none of those allegations relate to Plaintiff's claim against Dr. Shah.

[3] Plaintiff also sought to raise his second claim against Defendant Seed. However, Seed was dismissed in the Court's preliminary review Order because Plaintiff's factual allegations against Seed were insufficient (Doc. 9 at pp. 5-6).

lawsuit, in her official capacity, for the purpose of effectuating injunctive relief, should it be ordered (*Id.*).

Pursuant to the initial scheduling order, Plaintiff had until June 16, 2023, to file a motion for leave to amend his complaint (Doc. 21, pp. 2-3). Meanwhile, Defendants had until July 17, 2023, to file a motion for summary judgment based upon the failure to exhaust administrative remedies (*Id.* at pp. 3-4). Neither Plaintiff nor Defendants filed anything prior to the expiration of those deadlines. In addition, a clerk's entry of default was entered against Dr. Shah for his failure to file an answer, but that entry of default was subsequently set aside for good cause (*see* Docs. 22, 23, 30). On October 25, 2023, the Court found Defendants Brookhart, Adamson, and Daniel had waived the defense of failure to exhaust administrative remedies based upon their failure to timely file a motion on that topic (Doc. 32). However, that Order granted Dr. Shah a brief extension of time to file an exhaustion-based summary judgment motion (*Id.*).

On November 2, 2023, Plaintiff filed a motion for leave to file amended complaint (Doc. 34). Just one day later, Dr. Shah filed the instant exhaustion-based summary judgment motion and supporting memorandum (Docs. 35, 36). Plaintiff filed a response in opposition to Dr. Shah's motion on November 22, 2023 (Doc. 39), and Dr. Shah filed a reply in support on November 27, 2023 (Doc. 40).

Subsequently, by Order dated May 14, 2024, the Court granted Plaintiff's motion for leave to amend and Plaintiff was permitted to file an amended complaint which raised an Eighth Amendment deliberate indifference claim against Brookhart for her failure to ensure Plaintiff received adequate medical treatment and her role in requiring Plaintiff

to use black box restraints (*see* Doc. 51, pp. 8-9). However, as noted in that Order, Dr. Shah's exhaustion-based summary judgment motion remained pending and did not need to be refiled because Plaintiff's Amended Complaint did not include any additional allegations against Dr. Shah (*Id.* at p. 10).

<u>LEGAL STANDARD</u>

I.      *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). In other words, courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

II.     *Exhaustion Requirements*

As provided in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner has failed to abide by

the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018); *see, e.g.*, *Ramirez v. Young*, 906 F.3d 530, 537 (7th Cir. 2018) (grievance procedure was unavailable where prisoner was not notified of their existence because of his lack of English proficiency). Additionally, failure to exhaust is an affirmative defense that the defendants carry the burden of proving.[4] *Ramirez*, 906 F.3d at 533. "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 534.

---

[4] In most instances, when considering a motion for summary judgment based upon a prisoner's alleged failure to exhaust his or her administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, an evidentiary hearing is not necessary when there are no material factual disputes. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, the Court is able to rule upon Dr. Shah's motion without conducting a hearing as there are no material issues of fact that require a hearing to resolve. *See Robinson v. Budde*, No. 18-CV-6998, 2021 WL 1722857, at *4 (N.D. Ill. Apr. 30, 2021) ("Since the parties agree on the facts, there is no need for a hearing.").

### III.     IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Likewise,

if an inmate seeks to appeal the warden's decision on a grievance that has been found to

be an emergency, the ARB is also required to expedite processing of the grievance. *Id.* at

§ 504.850(f).

## Discussion

I. *Plaintiff's Grievances*

Dr. Shah has provided numerous grievance records to the Court (*see generally*

Docs. 36-1, 36-2, 36-3). The Court has reviewed the grievances and associated records and

has focused its analysis on grievances that discuss Plaintiff's medical concerns and were

filed around the timeframe alleged in Plaintiff's complaint.[5] Furthermore, while Plaintiff

filed a response in opposition, he neither provided nor alluded to any additional, relevant

grievances (*see* Doc. 39).

**A. Grievance 07-21-099, dated 7/7/2021 (Doc. 36-2, pp. 17-18)**

In this grievance, Plaintiff grieved the lack of treatment he received for a urinary

issue he was facing in July of 2021 (Doc. 36-2 at pp. 17-18). The grievance does not discuss

or challenge any of the treatment he received related to his neck/throat, and does not

reference or allude to treatment provided by Dr. Shah (*Id.*).

---

[5] Dr. Shah provided several grievances that were submitted either before or after the time period in question (*see generally* Docs. 36-1, 36-2, 36-3). However, due to both the timing and the nature of the issues being grieved, it is clear that many of these grievances do not pertain to Plaintiff's claim against Dr. Shah. Accordingly, having thoroughly reviewed the entire evidentiary record, the Court has limited its discussion of Plaintiff's grievances to only those that could conceivably be related to Plaintiff's neck cancer and/or Dr. Shah's treatment.

**B.  Grievance 07-21-258, dated 7/26/2021 (Doc. 36-1, p. 41)**

Plaintiff filed Grievance 07-21-258 on July 26, 2021, to grieve his lack of treatment after being diagnosed with neck cancer (Doc. 36-1 at p. 41). In this emergency grievance, Plaintiff noted that he had been diagnosed by an outside provider on June 23, 2021, and he still had not been called to the healthcare unit or had a biopsy taken (*Id.*). Plaintiff requested that he be seen by a doctor and be informed as to when his biopsy would be taken "[b]ecause cancer is not going to sit around and wait." (*Id.*). After this grievance was deemed an emergency (*Id.*), the grievance officer recommended, and the warden concurred in finding the grievance moot because a biopsy of the lump of Plaintiff's neck occurred on August 2, 2021 (*Id.* at p. 40). Plaintiff timely appealed this grievance to the ARB, but it was also denied at that level because a neck biopsy had already been completed (*Id.* at p. 39).

**C.  Grievance 09-21-143, dated 9/14/2021 (Doc. 36-1, pp. 30-31)**

Plaintiff filed Grievance 09-21-143 on September 14, 2021, to grieve the delay in follow-up treatment after receiving a CAT scan by an outside provider (Doc. 36-1 at pp. 30-31). Specifically, Plaintiff stated that Dr. Gonzaiga, a doctor in Lawrence's health care unit, told him that he would need to go back to an outside provider for further treatment, including surgery or chemotherapy (*Id.*). Plaintiff alleged he was receiving inadequate medical attention and requested he promptly receive the medical treatment ordered by the outside doctor (*Id.* at p. 30). This grievance was also deemed an emergency by the warden (*Id.*). However, the grievance officer recommended the grievance be denied as moot because Plaintiff underwent surgery on September 22, 2021 (*Id.* at p. 29). The

mode

warden, and subsequently the ARB, both concurred with the recommendation and deemed the grievance to be moot in light of Plaintiff's recent surgery (*Id.* at pp. 28-29).

### D.  Grievance 12-21-002, dated 11/25/2021 (Doc. 36-1, pp. 26-27)

Plaintiff filed Grievance 12-21-002 on November 25, 2021, to grieve Warden Brookhart's alleged inappropriate and disrespectful response to his in-person conversation with her wherein he discussed his serious medical concerns (Doc. 36-1 at pp. 26-27). Plaintiff claimed Warden Brookhart became angry and dismissive after realizing who he was (*Id.* at p. 27). Plaintiff continued by alleging that Warden Brookhart was aware that Lawrence's health care unit was providing inadequate care, but has not taken any action to resolve the problem (*Id.*). Plaintiff again marked this grievance as an emergency, but the warden determined that it was non-emergent (*Id.* at p. 26). Thereafter, Plaintiff filed his grievance using the standard, non-emergent procedure. Plaintiff's counselor noted that "per Warden Brookhart, 'Individual will receive care as prescribed by Wexford Health and the on-site MD.'" (*Id.*). The grievance officer then recommended denying this grievance because they were not able to substantive that IDOC policies were not followed (*Id.* at p. 25). The warden concurred in the grievance officer's recommendation (*Id.*). Finally, the ARB also denied Plaintiff's grievance, finding the issue was appropriately addressed by facility administration (*Id.* at p. 24).

### E.  Grievance 12-21-092, dated 12/11/2021 (Doc. 36-1, pp. 22-23)

This grievance only discussed Plaintiff's concerns related to his waist chain permit being revoked and the use of black box restraints (Doc. 36-1 at pp. 22-23). It neither

mentions Dr. Shah nor alludes to or complains of treatment he received in the summer of 2020 (*Id.*).

   **F. Grievance 01-22-038, dated 1/6/2022 (Doc. 36-1, pp. 18-19)**

   In this grievance, Plaintiff grieved the requirement that he be forced to use black box restraints when leaving Lawrence to receive outside medical treatment (Doc. 36-1 at pp. 18-19). This grievance does not discuss the prior medical treatment of Dr. Shah, and instead focused on the harm he suffered due to the use of the black box restraints (*Id.*).

   II.   *Analysis*

   Dr. Shah argues Plaintiff failed to exhaust his administrative remedies as it relates to Plaintiff's deliberate indifference claim raised against Dr. Shah (*see generally* Doc. 36). Specifically, Dr. Shah claims that Plaintiff failed to exhaust his administrative remedies because none of Plaintiff's grievances identify Dr. Shah, describe Dr. Shah, or provide any other information concerning the treatment Dr. Shah provided to Plaintiff in the summer of 2020 (*Id.* at pp. 12-13). In response, Plaintiff contends he exhausted his administrative remedies because his grievances were timely filed, properly appealed to the ARB, and explained in detail why something must be done (Doc. 39).

   Critically, section 504.810(c) provides that a "grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *See* 20 Ill. Admin. Code § 504.810(c) (2017). This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the

Case 3:22-cv-02166-MAB   Document 53   Filed 05/20/24   Page 11 of 13   Page ID #462

individual as possible. *Id*. In interpreting this provision, numerous cases have unambiguously held that a grievance must identify who their target is or implicate their target in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."); *Cunningham v. Isaacs*, No. 3:21-CV-247-MAB, 2022 WL 3026854, at *3 (S.D. Ill. Aug. 1, 2022) ("In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing."); *Walker v. Harris,* No. 3:19-CV-00664-MAB, 2021 WL 3287832, at *4 (S.D. Ill. Aug. 2, 2021) ("Additionally, even if Plaintiff had properly submitted this grievance through the appropriate institutional channels and then to the ARB prior to filing this lawsuit, the contents of this grievance are not specific enough to exhaust the claim against Defendant Harris.").

Here, Plaintiff's grievances suffer from a fatal flaw in that they fail to provide any meaningful notice of Plaintiff's allegations against Dr. Shah regarding the allegedly inadequate treatment he provided in the summer of 2020. In fact, none of the grievances filed by Plaintiff could be fairly construed as challenging the treatment Plaintiff received in the summer of 2020.[6] For instance, Grievance 07-21-258 grieved the lack of treatment Plaintiff received following his neck cancer diagnosis (Doc. 36-1 at p. 41). While this

---

[6] Admittedly, Grievance 09-21-143 does briefly mention that Plaintiff had been complaining for over a year that it hurts him to swallow (*see* Doc. 36-1 at p. 31). However, Grievance 09-21-143 is clearly only aimed at grieving the delay in receiving cancer treatment that Plaintiff alleges he was experiencing at that time (*Id.* at pp. 30-31). That grievance specifically requests Plaintiff receive the surgery or chemotherapy treatment ordered by the outside provider (*Id.*). It does not indicate Plaintiff was seeking relief for the care he received a year ago and in fact, it does not even mention that Plaintiff met with a doctor at that time (*Id.*).

presumably alerted the prison administration to Plaintiff's concern that he was not being

treated or having a biopsy taken in a timely fashion, nothing in this grievance challenges

the treatment he received a year prior (*Id.*). Plaintiff neither mentions nor alludes to any

insufficient treatment he experienced prior to his diagnosis in June 2021, nor does he

request any relief for treatment he received a year prior. Likewise, Grievance 09-21-143

again complains of the delay in receiving treatment around the time of filing his grievance

(*Id.* at pp. 30-31), not of the inadequate treatment he allegedly received over a year prior

(*Id.*).[7] *See, e.g.*, *Hacker v. Dart*, 62 F.4th 1073, 1084 (7th Cir. 2023) (finding a grievance that

challenged the plaintiff's access to listening devices and requested a listening device did

not provide prison officials with fair notice to his complaint that he was not receiving

medication).

   As in *Hacker*, Plaintiff's grievances, which discussed delays in treatment he was

receiving at that time, did not provide fair notice to prison officials that Plaintiff was

actually challenging Dr. Shah's delay in providing treatment or denial of treatment in the

summer of 2020. *Id.* Consequently, Plaintiff has failed to exhaust his administrative

remedies as they relate to his claim against Dr. Shah. For these reasons, Dr. Shah's Motion

for Summary Judgment for Failure to Exhaust Administrative Remedies is GRANTED

(Doc. 35).

---

[7] Furthermore, given Plaintiff's neck cancer diagnosis occurred on June 23, 2021, that would realistically be the latest date Plaintiff could argue he discovered that Dr. Shah's prior treatment in the summer of 2020 was inadequate. Therefore, pursuant to section 504.810(a), Plaintiff was required to file his grievance within 60 days of that date. However, Grievance 09-21-143 was not filed until September 14, 2021, approximately 83 days after he would have discovered the incident. As such, to the extent Grievance 09-21-143 was meant to grieve Dr. Shah's treatment in the summer of 2020, Plaintiff failed to timely file this grievance.

<u>CONCLUSION</u>

Dr. Shah's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies **is GRANTED** (Doc. 35; *see also* Doc. 36). Dr. Shah is **DISMISSED without prejudice** as a Defendant in this lawsuit.

This matter will proceed on Plaintiff's Eighth Amendment deliberate indifference claim against Defendants Adamson and Daniels ("Count Two") and Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Brookhart ("Count Three") (*see* Doc. 51 at p. 9). Due to Count Two having already progressed to discovery on the merits while Count Three is only at the exhaustion-based summary judgment stage, the Court intends to set a status conference to discuss the timeline of this case moving forward insofar as it relates to Defendant Brookhart and Count Three.[8]

**IT IS SO ORDERED.**

**DATED:** May 20, 2024

**s/ Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**

---

[8] At this point, Plaintiff has been granted leave to amend his complaint to add a deliberate indifference claim against Defendant Brookhart, in her individual capacity (*see* Doc. 51 at pp. 9-10). The Court noted that Defendant Brookhart, in her individual capacity, may still assert exhaustion and pursue this affirmative defense if there is a viable defense to pursue (*Id.*). However, at this juncture, it remains unclear whether Defendant Brookhart has a viable exhaustion defense and therefore the Court believes a status conference would be beneficial.